UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMY L. TUTORA,

        Plaintiff,

 v.

CORRECT CARE SOLUTIONS, LLC;
DOCTOR FELDMAN,

        Defendants.

No. 17-CV-9169 (KMK)

OPINION & ORDER

Appearances:

Jeremy L. Tutora
Endwell, NY
*Pro Se Plaintiff*

Jonathan H. Bard, Esq.
Paul A. Sanders, Esq.
Barclay Damon, LLP
Albany, NY
Rochester, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

 Jeremy Tutora ("Plaintiff") brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Correct Care Solutions ("Correct Care") and Sorel Feldman, M.D. ("Dr. Feldman") (collectively, "Defendants"), alleging that Defendants failed to provide him with adequate medical care while incarcerated at Orange County Jail as a pre-trial detainee, in violation of his rights under the Fourteenth Amendment. (*See* Compl. (Dkt. No. 2).) Before the Court is Defendants' Motion To Dismiss. (Not. of Mot. (Dkt. No. 27).) For the following reasons, the Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purpose of resolving the instant Motion.

On May 27, 2016, Plaintiff was in a car accident in which he sustained "severe" injuries to his neck and back, including "whiplash," "nerve damage, post concussive syndrome, severe migraines, nausea[,] and vomiting." (Compl. 3.)[1] He received medical treatment, "was actively under supervision of a rehabilitation and pain specialist," and was "regularly" receiving acupuncture. (*Id.*)

On July 31, 2017, Plaintiff entered Orange County Jail as a pre-trial detainee. (*Id.*) Plaintiff alleges that he is "not receiving adequate care or proper regard" for his injuries. (*Id.*) In particular, Plaintiff alleges that he "asked for [a] muscle rub, [a] more efficient mattress, [a] back brace, and even a cervical collar to help" relieve his pain. (*Id.*) However, Plaintiff's "request[s] for relief" to the Jail's "medical department" — which is run by Correct Care and "overseen by Doctor Feldman" — have "been denied despite the visual effects of [his] injuries" and what the "outside medical records show." (*Id.*) Plaintiff alleges that, "due to the lack of care," "incompetent decisions," and "neglect," he has "developed [s]ciatic nerve damage" and numbness in his left leg, "causing [him] to walk with a limp." (*Id.*) Finally, Plaintiff alleges that "overcrowdedness prevented [him] from being in a safe medical setting – which Dr. Feldman denied." (*Id.*)

---

[1] Plaintiff's filings do not use consistent page numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top of each page.

B.  Procedural Background

Plaintiff filed his Complaint on November 21, 2017.  (Dkt. No. 2.)  Plaintiff's request to proceed in forma pauperis was granted on January 3, 2018.  (Dkt. No. 8.)  On May 16, 2018, Defendants filed a letter seeking a pre-motion conference in anticipation of moving to dismiss.  (Dkt. No. 22.)  On May 21, 2018, Plaintiff filed a "rebuttal" to Defendant's letter.  (Dkt. No. 23.)  On June 4, 2018, the Court set a briefing schedule.  (Dkt. No. 24.)  Defendants filed their Motion To Dismiss and accompanying papers on July 16, 2018.  (Not. of Mot.; Decl. of Jonathan H. Bard, Esq. in Supp. of Mot. (Dkt. No. 28); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 29).)  On August 15, 2018, Plaintiff filed his response in opposition to the Motion.  (Pl.'s Resp. to Def.'s Mot. ("Pl.'s Mem.") (Dkt. No. 31).)  On August 31, 2018, Defendants filed a reply.  (Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 33).)

## II.  Discussion

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds that the Complaint fails to state a *Monell* claim, fails to state a deliberate-indifference claim, and fails to state any state-law claim.  (Defs.' Mem. 5–17.)  The Court addresses each argument separately.

A.  Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir.

2012)).  Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted).  When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B.  Analysis

1.  *Monell* Liability

Plaintiff does not indicate whether he sues Defendants in their individual or official capacities.  (*See generally* Compl.)  In such instances, courts often construe such claims as brought in both capacities.  *See, e.g.*, *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) ("[A]

5

plaintiff who has not clearly identified . . . the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other."); *Jackson v. Ramirez*, No. 15-CV-617, 2016 WL 796854, at *5 (S.D.N.Y. Feb. 22, 2016) (construing complaint "as being brought against the state defendants in both their individual and official capacities" in light of *Frank*), *aff'd*, 691 F. App'x 45 (2d Cir. 2017).

"A claim asserted against a [defendant] in his official capacity . . . is in effect a claim against the governmental entity itself . . . for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91). In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted). Rather, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a

6

> supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). Moreover, a plaintiff also must establish an "affirmative" causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

Plaintiff fails entirely to allege the fifth *Monell* element. Plaintiff does not allege that Orange County Jail (or any other municipal entity) had a formal policy on medical care relevant here, such as a policy regarding care of inmates with orthopedic, neck, or back problems. Nor does Plaintiff cite to any examples of similar incidents — for example, other denials of care for pre-existing injuries or instances of inadequate care for neck and back injuries — that would suggest an informal municipal custom or practice. *See Perez v. Annucci*, No. 18-CV-147, 2019 WL 1227801, at *5 (S.D.N.Y. Mar. 15, 2019) ("The amended complaint does not allege any other specific instances of excessive force at Green Haven or any other DOCCS facility, nor does plaintiff specifically allege any other inmate in DOCCS custody suffered excessive force."); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (alteration and quotation marks omitted)); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case"); *see also Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (affirming dismissal of *Monell* claim where "the amended complaint provides only one additional example of a similar incident").

Therefore, Plaintiff fails to allege the fifth element required to state a *Monell* claim. Accordingly, Plaintiff's claim against Correct Care, as well as Plaintiff's claim against Dr. Feldman in his official capacity, must be dismissed. *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [c]ity policy — unspoken or otherwise — that violates the Federal Constitution").

### 2. Deliberate Indifference

Plaintiff alleges that Defendants were deliberately indifferent to his health while incarcerated at Orange County Jail. (*See* Compl 3.) Because Plaintiff was a pretrial detainee at the time of the allegations, his deliberate-indifference claims are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). The Second Circuit recently held that deliberate-indifference claims under the Fourteenth Amendment are analyzed somewhat differently than the same claims under the Eighth Amendment, which applies to inmates who have been convicted and sentenced. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). To be sure, the overarching framework remains the same. Under both the Eighth and Fourteenth Amendments, to state a deliberate-indifference claim an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendant "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017) (citing *Darnell*, 849 F.3d at 29).

8

The first element "is evaluated the same way under both the Eighth Amendment and Fourteenth Amendment." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *19 n.19 (S.D.N.Y. Mar. 30, 2018) (citing *Darnell*, 849 F.3d at 30). This requirement is "objective": The inmate must show that the "the alleged deprivation" is "sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted). In other words, the inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Blandon v. Capra*, No. 17-CV-65, 2017 WL 5624276, at *7 (S.D.N.Y. Nov. 20, 2017) (quoting *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996)).

The second element "applies differently to claims under the Eighth Amendment and the Fourteenth Amendment." *Howard v. Brown*, No. 15-CV-9930, 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018) (citing *Darnell*, 849 F.3d at 34–35). While the Eighth Amendment "imposes a subjective standard" — that the prison official "know[] of and disregard[] an excessive risk to inmate health or safety" — the Fourteenth Amendment, applicable here, imposes an "objective standard." *Id.* (citing *Darnell*, 849 F.3d at 32). That is, the "official need only recklessly fail[] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* (citing *Darnell*, 849 F.3d at 35). However, "[d]espite the slightly lower standard" applicable to pretrial detainees, "which is akin to objective recklessness, any § 1983 claim or a violation of due process requires proof of a *mens rea* greater than mere negligence." *Miller v. County of Nassau*, No. 16-CV-5843, 2018 WL 1597401, at *3 (E.D.N.Y. Mar. 31, 2018) (ultimately quoting *Darnell*, 849 F.3d at 36). That is because "liability for negligently inflicted harm is categorically belief the threshold of

9

constitutional due process." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) (citation, quotation marks, and emphasis omitted).

Defendants argue that the Complaint fails to allege facts sufficient to satisfy either element required to state a deliberate-indifference claim under the Fourteenth Amendment. (*See* Defs.' Mem. 5–8, 10–16.)

Even assuming Defendants' denial of medical care of Plaintiff's neck and back injuries is "sufficiently serious" to satisfy the objective element, *Spavone*, 719 F.3d at 138, Plaintiff fails to allege facts plausibly suggesting that either Dr. Feldman or Correct Care acted with the "objective recklessness" required to satisfy the mental-state element, *Miller*, 2018 WL 1597401, at *3. The Complaint alleges that Plaintiff "asked for [a] muscle rub, [a] more efficient mattress, [a] back brace, and . . . a cervical collar to help" relieve his pain, and that Plaintiff's "request[s] for relief" were "denied" by Dr. Feldman "despite the visual effects of [his] injuries" and what the "outside medical records show." (Compl. 3) The Complaint also alleges that "overcrowdedness prevented [Plaintiff] from being in a safe medical setting – which Dr. Feldman denied." (*Id.*) These threadbare allegations do not plausibly suggest objective recklessness. Plaintiff does not allege how many times he requested these treatments, whether he continued to be denied these treatments after his conditions allegedly worsened, whether he was given other medication or treatment or was entirely denied medical care, what the "outside medical records" would have indicated to Defendants about his condition, whether these records were made known or available to Defendants, or, indeed, what he means by his conclusory allegation of "overcrowdedness." "While Plaintiff did not receive his desired treatment . . . , 'it is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, *without more*, does not amount to deliberate

10

indifference.'" *Crouch v. Spaulding*, No. 16-CV-1435, 2019 WL 1004539, at *4 (N.D.N.Y. Jan. 24, 2019) (emphasis added) (quoting *Washington v. Westchester County Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014)); *see also Durham v. Jones*, No. 17-CV-434, 2019 WL 1103284, at *5 (N.D.N.Y. Jan. 23, 2019) ("The fact that [the plaintiff] may feel that he did not get the level of medical attention he deserved is insufficient to establish a claim." (citation omitted)). The Complaint does not allege what "more" took place here; the facts as alleged do not plausibly suggest that Defendants "should have known" that Plaintiff's "condition posed an *excessive* risk to [his] health." *Darnell*, 849 F.3d at 35 (emphasis added); *see also, e.g.*, *Sanders v. City of New York*, No. 16-CV-7426, 2018 WL 3117508, at *8 (S.D.N.Y. June 25, 2018) (holding deliberate indifference not established where "none of the[] allegations demonstrates that [the defendants] 'knew, or should have known' that depriving [the plaintiff] of an orthopedic mattress posed an 'excessive risk' to his 'health or safety.'" (quoting *Darnell*, 849 F.3d at 35)); *Benjamin v. Pillai*, No. 16-CV-1721, 2018 WL 704998, at *4 (D. Conn. Feb. 5, 2018) (holding claim that the defendants "refus[ed] to provide [the plaintiff] a cane or a back brace . . . amounts to nothing more than a disagreement about the appropriate treatment, which is insufficient to support a claim of deliberate indifference").

Indeed, the Complaint explicitly alleges that it was Defendants' "neglect" and "incompetent decisions" that caused him to suffer nerve damage, leg numbness, a limp, and related injuries. (Compl. 3; *see also* Pl.'s Mem. 11 (arguing that "Dr. Feldman continued to make incompetent decisions" and "was so grossly incompetent [that] he had nurses under him making decisions for inmate patients").) Yet, allegations of "mere negligence will not suffice" to state a claim of deliberate indifference. *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process

11

requires proof of a *mens rea* greater than mere negligence."); *Colvin v. UConn Corr. Managed Health Care*, No. 19-CV-289, 2019 WL 1230361, at *2 (D. Conn. Mar. 15, 2019) ("Allegations of mere negligence or medical malpractice do not rise to the level of deliberate indifference and are not cognizable under § 1983." (citing *Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006))); *Davidson v. Scully*, 155 F. Supp. 2d 77, 88 n.13 (S.D.N.Y. Aug. 22, 2001) (holding that "poor medical judgment does not constitute deliberate indifference"). Accordingly, Plaintiff's Fourteenth Amendment deliberate-indifference claim fails.

### 3. State-Law Claims

Although Plaintiff's Complaint does not explicitly allege any state-law claim, the Complaint may be read to suggest state-law claims of negligence and medical malpractice. (*See generally* Compl.). The Court need not, however, resolve at this time whether Plaintiff sufficiently alleges any state-law claim. Because Plaintiff fails to state a § 1983 claim as to any Defendant, the Court declines at this time to exercise supplemental jurisdiction over any state-law claims alleged. *See Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008).

### III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. Because this is the first adjudication of Plaintiff's claims, dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint. The amended complaint must contain *all* of the claims and factual allegations that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 27), and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: March 27, 2019
       White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE